Todd S. Kartchner (SBN 250215)
Christopher L. Callahan (Admitted Pro Hac Vice)
FENNEMORE CRAIG, P.C.
2394 E. Camelback Road, Suite 600
Phoenix, Arizona  85016
Phone: (602) 916-5000 / Fax: (602) 916-5999
tkartchner@fennemorelaw.com
ccallahan@fennemorelaw.com

Little Fawn Boland (SBN 240181)
CEIBA LEGAL, PC
35 Miller Avenue, No. 143
Mill Valley, CA  94941
Phone: (415) 939-7797
littlefawn@ceibalegal.com

Keith Anderson (SBN 282975)
KEITH ANDERSON, ATTORNEY AT LAW
35 Madrone Park Circle
Mill Valley, CA 94941
Phone: (401) 218-5401
attorneykeithanderson@gmail.com

Scott Crowell (Admitted Pro Hac Vice)
CROWELL LAW OFFICE
TRIBAL ADVOCACY GROUP LLP
1487 W. State Route 89A, Suite 8
Sedona, Arizona 86336
Phone: (425) 802-5369
scottcrowell@clotag.net

*Attorneys for Plaintiff*
*Coyote Valley Band of Pomo Indians*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COYOTE VALLEY BAND OF POMO INDIANS, a federally recognized Indian tribe,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT FINDLETON, doing business as Terre Construction and On-Site Equipment; ANN C. MOORMAN, Judge of the Superior Court of Mendocino County, California, in her official capacity; SAVINGS BANK OF MENDOCINO COUNTY, a California corporation; JOHN AND JANE DOES 1-10; ABC CORPORATIONS 1-10; and XYZ LLCs 1-10,<br><br>Defendants. | Case No. 4:22-cv-00607-JST<br><br>**PLAINTIFF COYOTE VALLEY BAND OF POMO INDIANS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 2

II. ARGUMENT ......................................................................................................... 4

    A. THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER ALL OF THE TRIBE'S CAUSES OF ACTION, WHICH ARE CONTROVERSIES THAT ARISE UNDER FEDERAL LAW .......................................................... 4

    B. LONG-ESTABLISHED SUPREME COURT PRECEDENT REQUIRES THE COURT TO ENFORCE—NOT DISREGARD—THE TRIBAL COURT'S JURISDICTIONAL RULING ................................................................................ 6

    C. NEITHER ROOKER-FELDMAN, NOR YOUNGER, NOR COLORADO RIVER PRECLUDE THE COURT FROM GRANTING THE TRIBE'S REQUEST FOR A PRELIMINARY INJUNCTION ............................................. 9

        1. The Rooker-Feldman Doctrine Does Not Apply ....................................... 9

        2. The Younger Doctrine Does Not Apply ................................................... 13

        3. The Colorado River Doctrine Does Not Apply........................................ 15

    D. THE ANTI-INJUNCTION ACT DOES NOT PRECLUDE THE COURT FROM GRANTING THE TRIBE'S MOTION FOR A PRELIMINARY INJUNCTION ................................................................................................ 16

    E. THE TRIBAL COURT IS A DULY FORMED AND LEGITIMATE TRIBUNAL, AND DEFENDANTS' ASSERTIONS TO THE CONTRARY ARE UNFOUNDED ........................................................................................ 18

    F. NEITHER ELEVENTH AMENDMENT IMMUNITY NOR JUDICIAL IMMUNITY BAR THE TRIBE'S REQUEST FOR A PRELIMINARY INJUNCTION ................................................................................................ 21

    G. THE TRIBE'S INJURY IS NOT SOLELY MONETARY; ABSENT AN INJUNCTION, THE TRIBE WILL SUFFER IRREPARABLE HARM TO ITS SOVEREIGNTY AND SOVEREIGN IMMUNITY.............................................. 22

    H. THE UNCLEAN HANDS DOCTRINE DOES NOT APPLY, AND IN ANY EVENT, THE TRIBE DOES NOT HAVE UNCLEAN HANDS........................ 24

    I. NEITHER THE BALANCE OF HARDSHIPS NOR PUBLIC POLICY FAVOR DENYING INJUNCTIVE RELIEF ...................................................... 27

    J. BY HIS PROMISE TO INVOKE THIS COURT'S JURISDICTION, FINDLETON IS FORECLOSED FROM OPPOSING THE TRIBE'S REQUEST FOR INJUNCTIVE RELIEF ................................................................ 28

    K. AT VERY LEAST, DEFENDANTS HAVE NOT REBUTTED THE TRIBE'S SHOWING THAT THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS ................................................................................... 30

III. CONCLUSION ................................................................................................. 30

FENNEMORE CRAIG, P.C.<br>2394 E. CAMELBACK ROAD, STE. 600<br>PHOENIX, ARIZONA, 85016

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases** **Pages(s)**

3

*Alliance for the Wild Rockies v. Cottrell,*
4     632 F.3d 1127 (9th Cir. 2011)........................................................................30

5 *Alvarado v. Table Mtn. Rancheria,*
    509 F.3d 1008 (9th Cir. 2007)...........................................................*passim*

6
*AT&T Corp. v. Coeur d'Alene Tribe,*
7     295 F.3d 899 (9th Cir. 2002) ..................................................................19

8 *Bowen v. Doyle,*
    880 F. Supp. 99 (W.D.N.Y. 1995) .........................................................17

9
*Bryan v. Itasca County,*
10     426 U.S. 373 (1976) .................................................................................15

11 *Cardin v. De La Cruz,*
    671 F.2d 363 (9th Cir. 1982)....................................................................3

12
*Champion Int'l Corp. v. Brown,*
13     731 F.2d 1406 (9th Cir. 1984).........................................................14, 28

14 *Coeur d'Alene Tribe v. Hawks,*
    933 F.3d 1052 (9th Cir. 2019)...........................................................4, 5, 6

15
*Cooper v. Ramos,*
16     704 F.3d 772 (9th Cir. 2012) ..................................................................10

17 *Crawford v. Genuine Parts,*
    947 F.2d 1405 (9th Cir. 1991) .............................................................9,10

18
*Dollar Systems, Inc. v. Avcar Leasing Sys., Inc.,*
19     890 F.2d 165 (9th Cir. 1989).................................................................24

20 *Durfree v. Duke,*
    375 U.S. 106 (1963) .................................................................................11

21
*Edelman v. Jordan,*
22     415 U.S. 651 (1974) .................................................................................22

23 *Fehlhaber v. Fehlhaber,*
    681 F.2d 1015 (5th Cir. 1982)................................................................11

24
*Fleming v. Gordon & Wong L. Grp., P.C.,*
25     723 F. Supp. 2d 1219 (N.D. Cal. 2010) ................................................10

26 *FMC Corp. v. Shoshone-Bannock Tribes,*
    942 F.3d 916 (9th Cir. 2019)..................................................................19

27
*Fort Belknap Indian Cmty. of Fort Belknap Indian Rsrv. v. Mazurek,*
28     43 F.3d 428 (9th Cir. 1994)............................................................14, 28

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

- ii -

*Gartrell Const. Inc. v. Aubry,*
  940 F.2d 437 (9th Cir. 1991)......................................................................................14, 28

*Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.,*
  715 F.3d 1196 (9th Cir. 2013)............................................................................................19

*Harvey v. Ute Indian Tribe of Uintah & Ouray Rsvn.,*
  416 P.3d 401 (Utah 2017)....................................................................................................7

*Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill.,*
  421 F.3d 835 (9th Cir. 2005)..............................................................................................11

*Idaho v. Coeur d'Alene Tribe of Idaho,*
  521 U.S. 261 (1997)............................................................................................................21

*In re Gruntz,*
  202 F.3d 1074 (9th Cir. 1999)............................................................................................12

*In re Pavelich,*
  229 B.R. 777 (9th Cir. B.A.P. 1999).....................................................................................9

*Institute of Cetacean Research v. Sea Shepherd Conservation Society,*
  725 F.3d 940 (9th Cir. 2013)..................................................................................24, 25, 26

*Iowa Mut. Ins. Co. v. LaPlante,*
  480 U.S. 9 (1987)...........................................................................................2, 7, 8, 9,16, 23, 28

*Kalb v. Feuerstein,*
  308 U.S. 433 (1940)............................................................................................................10

*Kiowa Indian Tribe of Okla. v. Hoover,*
  150 F.3d 1163 (10th Cir. 1998)..............................................................................22, 23, 24

*Merrell v. United States,*
  140 F.2d 602 (10th Cir. 1944)............................................................................................10

*Michigan v. Bay Mills Indian Cmty.,*
  572 U.S. 782 (2014)............................................................................................................25

*National Farmers Union Insurance Companies v. Crow Tribe,*
  471 U.S. 845 (1985)......................................................................................................passim

*Noel v. Hall,*
  341 F.3d 1148 (9th Cir. 2003)..............................................................................................9

*Norton v. Ute Indian Tribe of the Uintah and Ouray Reservation,*
  862 F.3d 1236 (10th Cir. 2017)..........................................................................................19

*Pan Am. Co. v. Sycuan Band of Mission Indians,*
  884 F.2d 416 (9th Cir. 1989)................................................................................................3

*People of State of N.Y. ex rel. Halvey v. Halvey,*
  330 U.S. 610 (1947)............................................................................................................11

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

- iii -

*Pueblo of Santa Ana v. Nash*,
  854 F. Supp. 2d 1128, 1142-43 (D.N.M. 2012) ........................................................ 17

*Pulliam v. Allen*,
  466 U.S. 522 (1984) ............................................................................................. 21, 28

*Republic Molding Corp. v. B.W. Photo Utils.*,
  319 F.2d 347 (9th Cir. 1963) ..................................................................................... 24

*Rissetto v. Plumbers & Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996) ........................................................................................ 30

*Santa Clara Pueblo v. Martinez*,
  436 U.S. 49 (1978) ............................................................................................... 16, 19

*Seneca-Cayuga Tribe of Okla. v. State of Oklahoma ex rel. Thompson*,
  874 F.2d 709 (10th Cir. 1989) ......................................................................... 14, 18, 27

*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013) ..................................................................................................... 13

*Stone v. Williams*,
  970 F.2d 1043 (2d Cir. 1992) ...................................................................................... 11

*Swett v. Schenk*,
  792 F.2d 1447 (9th Cir. 1986) ......................................................................... 11, 20, 27

*Sycuan Band of Mission Indians v. Roache*,
  54 F.3d 535 (9th Cir. 1994) ............................................................................ 14, 17, 28

*Three Affiliated Tribes of Fort Berthold Rsvn. v. Wold Eng'g*,
  476 U.S. 877 (1986) ............................................................................................. 13, 16

*Tohono O'odham Nation v. Schwartz*,
  837 F. Supp. 1024 (D. Ariz. 1993) ............................................................................. 17

*U.S. v. Park Place Assoc., Ltd.*,
  563 F.3d 907 (9th Cir. 2009) ...................................................................................... 15

*Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*,
  455 U.S. 691 (1982) ................................................................................................... 11

*United Keetoowah Band of Cherokee Indians v. State of Okla. ex rel. Moss*,
  927 F.2d 1170 (10th Cir. 1991) .................................................................................... 5

*United States v. Nordic Village Inc.*,
  503 U.S. 30 (1992) ..................................................................................................... 16

*United States v. Park Place Assoc., Ltd.*,
  563 F.3d 907 (9th Cir. 2009) ........................................................................................ 2

*United States v. Testan*,
  424 U.S. 392 (1976) ................................................................................................... 16

*Upstate Citizens for Equal., Inc. v. United States*,

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

- iv -

841 F.3d 556 (2d Cir. 2016) ................................................................................. 13

*Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence (Lawrence II)*,
22 F.4th 892 (10th Cir. 2022) ................................................................... passim

*Verizon Maryland, Inc. v. Public Serv. Com'n of Md.*,
535 U.S. 635 (2002) ...................................................................................... 21

*Water Wheel Camp. Rec. Area, Inc. v. LaRance*,
642 F.3d 802 (9th Cir. 2011)) ........................................................................ 6

*White Mtn. Apache Tribe v. Smith Plumbing Co., Inc.*,
856 F.2d 1301 (9th Cir. 1988) ................................................................. 17, 18

*Williams v. Lee*,
358 U.S. 217 (1959) ................................................................... 3, 21, 22, 23

*Wilson v. Marchington*,
127 F.3d 805 (9th Cir. 1997) ....................................................................... 10

*Window Rock Unif. Sch. Dist. v. Reeves*,
861 F.3d 894 (9th Cir. 2017) .................................................................. 8, 13

**California Cases**

*Findleton v. Coyote Valley Band of Pomo Indians  (Findleton I)*
205 Cal. Rptr. 3d 699 (App. 2016) ................................................................ 8

*Findleton v. Coyote Valley Band of Pomo Indians  (Findleton III)*
285 Cal. Rptr. 3d 47 (App. 2021) ............................................................... 19

**Federal Statutes**

28 U.S.C. § 1331 ....................................................................................... 5, 6

28 U.S.C. § 1362 ....................................................................................... 5, 6

**California Statutes**

Cal. Civ. Code § 3439.04(a) ......................................................................... 26

**Rules**

Fed. R. Civ. P. 17(d) .................................................................................. 27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1
2

**MEMORANDUM OF POINTS AND AUTHORITIES**

3

    Plaintiff Coyote Valley Band of Pomo Indians ("Plaintiff" Coyote Valley" or "Tribe"),

4

pursuant to this Court's Order of February 28, 2021 [doc. 54 ], submits this combined Reply in Support

5

of Motion for Preliminary Injunction [doc.8, errata doc. 9]. This Reply addresses the arguments raised

6

in three separate opposition briefs, one filed by each of Robert Findleton ("Findleton") [doc. 43], Hon.

7

Ann. C. Moorman ("Judge Moorman") [doc. 51], and Savings Bank of Mendocino County (The

8

"Bank") [doc. 41] (collectively, "Defendants").

9

**I.    INTRODUCTION**

10

    Three points are apparent from the three responses to the Motion for Preliminary Injunction

11

filed by Defendants, each of which undermine Defendants' opposition to the Motion.    First,

12

Defendants do not dispute the established proposition that "[a] waiver of sovereign immunity means

13

the [sovereign] is amenable to suit in a court properly possessing jurisdiction; it does not guarantee a

14

forum." *United States v. Park Place Assoc., Ltd.*, 563 F.3d 907, 923 (9th Cir. 2009). Thus, it is

15

undisputed that the State Court's conclusion that it has "jurisdiction to refer the parties to

16

mediation/arbitration" because "[w]hen a tribe waives its sovereign immunity it, in effect, consents to

17

state court jurisdiction" is fatally flawed. Ex. I to Verif. Compl. [Doc. 1-2] at 125; *see Alvarado v.*

18

*Table Mtn. Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007) ("Appellants cannot rest on the assertion

19

that principles of immunity do not apply.  Rather, Appellants must establish some form of statutory

20

authorization for their claims.").

21

    Second, Defendants do not dispute that for a state court to have "subject matter jurisdiction in

22

an action against a sovereign, in addition to a waiver of sovereign immunity, there must be statutory

23

authority vesting the [state] court with subject matter jurisdiction." *Alvarado*, 509 F.3d at 1016.

24

Defendants failed, however, to identify any statute by which Congress vested the State Court with

25

subject-matter jurisdiction over actions between an Indian tribe and a nonmember arising out of tribal

26

land.  Third, Defendants do not dispute that "[c]ivil jurisdiction over" "the activities of non-Indians on

27

reservation lands" "presumptively lies in the tribal courts unless affirmatively limited by a specific

28

treaty provision or federal statute," *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 18 (1987), or that

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

Findleton expressly "agree[d] to the jurisdiction of the [Tribe]," Verif. Compl. [Doc. 1] at ¶ 24 & Ex. B [Doc. 1-2] at 93.

In view of these three undisputed points, Defendants essentially argue this Court has no business interfering with the enforcement of orders and judgments the State Court lacked jurisdiction to enter in the first place. But the facts and issues in this case are substantially the same in all material respects to those in *Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence (Lawrence II)*, 22 F.4th 892 (10th Cir. 2022), in which the Tenth Circuit invoked Ninth Circuit and U.S. Supreme Court precedent to conclude that a Utah state court lacked subject-matter jurisdiction over a non-Indian's contract claims against a federally-recognized Indian tribe. The Tribe's claims against Findleton are based on the same binding precedent from the Supreme Court and Ninth Circuit, which establishes that without an express grant of subject-matter jurisdiction from Congress, state courts, including the Superior Court of Mendocino County (the "State Court"), lack subject-matter jurisdiction over civil suits by non-Indian plaintiffs against Indian tribes arising out of a transaction occurring on reservation lands. *Lawrence II*, 22 F.4th at 910-911 (holding that the district court abused its discretion in denying the Ute Tribe's request for a preliminary injunction against state court proceedings involving a non-Indian's contract claims over which the state court lacked jurisdiction); *see also, e.g.*, *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989) ("Absent congressional or tribal consent to suit, state and federal courts have no jurisdiction over Indian tribes."); *Cardin v. De La Cruz*, 671 F.2d 363, 366 (9th Cir. 1982) (absent congressional action subjecting the tribe to the adjudicatory authority of other forums, such disputes are exclusively the province of tribal courts, citing *Williams v. Lee*, [358 U.S. 217 (1959)]).

*Lawrence II* is consistent with binding Supreme Court and Ninth Circuit precedent and undermines every aspect of Defendants' opposition to the Tribe's Motion for Preliminary Injunction. Indeed, the stark distinction between Defendants' position and the *Lawrence II* decision cannot be overstated. *Lawrence II*, which is based on long-standing federal statutory and common law, stands for the proposition that, in the absence of congressional authorization, a state court lacks subject-matter jurisdiction over disputes between an Indian tribe and a nonmember arising out of tribal land—even

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

- 3 -

when the Indian tribe waived sovereign immunity. By contrast, Defendants ask this Court to uphold the State Court's faulty reasoning that an Indian tribe's waiver of sovereign immunity in any form is "in effect" an automatic "consent[] to state court jurisdiction." As discussed below, the State Court's reasoning contradicts established principles of subject-matter jurisdiction. *See, e.g.*, *Alvarado*, 509 F.3d at 1016) ("[T]o establish that the district court had subject matter jurisdiction over their claims, Appellants cannot rest on the assertion that principles of immunity do not apply."); *Lawrence II*, 22 F.4th at 906 ("[E]ven if the Agreement waives tribal sovereign immunity, that waiver does not resolve whether the Utah state court has subject-matter jurisdiction over Becker's case.").

With respect to abstention and the Anti-Injunction Act, *Lawrence II* and other authorities illuminate that the *Rooker-Feldman*, *Younger*, and *Colorado River* abstention doctrines do not apply, and that this case falls squarely within the "necessary in aid" exception to the Anti-Injunction Act. Moreover, Defendants failed to rebut the Tribe's showing of irreparable harm and that the balance of hardships favors the Tribe. Defendants similarly failed to provide any authority to contradict the strong state and federal policy of recognizing, valuing, and protecting tribal sovereignty and sovereign immunity. Nor is there any merit to Findleton's assertion that the Tribe's hands are unclean because it invoked the jurisdiction of the Coyote Valley Tribal Court of the Northern California Intertribal Court System ("Tribal Court")—which is precisely what Supreme Court and Ninth Circuit precedent require. Defendants' oppositions to the Tribe's Motion for Preliminary Injunction lack merit, and the Tribe respectfully requests that this Court grant the Motion.

## II. ARGUMENT

### A. THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER ALL OF THE TRIBE'S CAUSES OF ACTION, WHICH ARE CONTROVERSIES THAT ARISE UNDER FEDERAL LAW.

There is no merit to the Bank's argument that the Court lacks jurisdiction because "there is no federal question." Bank Resp. [Doc. 41] at 4:7. In *National Farmers Union Insurance Companies v. Crow Tribe*, 471 U.S. 845 (1985), the Supreme Court stated that "whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331," *Id.* at 852,

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA 85016

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and in *Coeur d'Alene Tribe v. Hawks*, 933 F.3d 1052 (9th Cir. 2019), the Ninth Circuit held that "actions seeking to enforce a tribal judgment against nonmembers raise a substantial question of federal law," *id.* at 1053–54. This Court therefore has subject-matter jurisdiction over the Tribe's claims against all Defendants, including the Bank, pursuant to 28 U.S.C. § 1331. *See* 1st Am. Compl. [Doc. 26] at ¶ 8. Moreover, under *National Farmers Union* and *Hawks*, this Court has subject-matter jurisdiction over the Tribe's request for recognition and enforcement of the Tribal Court's orders against Findleton and the Bank.

This Court also has subject-matter jurisdiction under 28 U.S.C. § 1362, which grants this Court original jurisdiction over "all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." Federal courts recognize that "an action . . . by a tribe asserting its immunity from the enforcement of state laws is a controversy within § 1362 jurisdiction as a matter arising under the Constitution, treaties or laws of the United States." *United Keetoowah Band of Cherokee Indians v. State of Okla. ex rel. Moss*, 927 F.2d 1170, 1173 (10th Cir. 1991). Moreover, the Ninth Circuit recognizes that "cases arising under the rules articulated by federal courts in the form of federal common law" are included within the ambit of a "civil action[] arising under the Constitution, laws, or treaties of the United States." *Hawks*, 933 F.3d at 1055 (quoting 28 U.S.C. § 1331).

Applied here, these principles establish that this Court has subject-matter jurisdiction over the Tribe's claims pursuant to 28 U.S.C. § 1362. Among other things, the Tribe seeks recognition and enforcement of the Tribal Court Orders against Findleton, a nonmember, which necessarily implicates "federal common or statutory law," *Hawks*, 93 F.3d at 1060, and therefore is a matter that "arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1362. For similar reasons, this Court also has subject-matter jurisdiction over the Tribe's cause of action for a declaratory judgment that the State Court lacks jurisdiction over it. *See* 1st Am. Compl. [Doc. 26] at 20. Because the State Court cannot, without authorization from Congress, exercise subject-matter jurisdiction over a controversy between an Indian tribe and nonmember arising on tribal land, whether the State Court

- 5 -

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

has subject-matter jurisdiction is a matter that necessarily raises a federal question. This Court should reject Defendants' insistence that this Court lacks subject-matter jurisdiction under 28 U.S.C. § 1362.

This Court also should reject the Bank's inaccurate assertion that the "Tribe fail[ed] to allege what federal statute or constitutional provision it relies on to invoke federal question jurisdiction over [the] Bank." Bank Resp. [Doc. 41] at 4:15–16. Paragraph 8 of the Tribe's First Amended Complaint expressly alleges that "[t]he Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1362, *Coeur d'Alene Tribe v. Hawks*, 933 F.3d 1052 (9th Cir. 2019), and *Ute Indian Tribe of the Uintah and Ouray Reservation v. Lawrence*, F.4th , 2022 WL 5341 (10th Cir. 2022)." 1st Am. Compl. [Doc. 26] at ¶ 8. This is consistent with *Hawks*, in which the court explained that a tribe's action to enforce a tribal court judgment against a nonmember necessarily implicates federal law because the tribe "will inevitably be forced to establish its authority to [impose its policy on the nonmember] under federal common or statutory law." 933 F.3d at 1060. This undermines the Bank's assertion that the Tribe has not alleged the federal law from which its claims arise. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1362 and should reject the Bank's insistence to the contrary.

This Court should also reject the Bank's assertion that it "never agreed to submit to the jurisdiction of the Tribal Court." Bank Resp. [Doc. 41] at 4. As discussed in the Tribe's Emergency Motion for Temporary Restraining Order [Doc. 27] (the "Emergency Motion") and Renewed Emergency Motion for Temporary Restraining Order [Doc. 34] (the "Renewed Emergency Motion"), the Bank "entered into a contractual relationship with the Tribe that is expressly governed by all applicable federal laws" and therefore "should have reasonably anticipated that [its] actions might 'trigger' tribal authority." Emergency Mot. [Doc. 27] at 7 (quotation marks omitted) (quoting *Water Wheel Camp. Rec. Area, Inc. v. LaRance*, 642 F.3d 802, 817–18 (9th Cir. 2011)); *accord* Renewed Emergency Mot. [Doc. 34] at 8. The Tribe also has *in rem* jurisdiction over its funds, which further undermines the Bank's argument that the Tribal Court lacks jurisdiction over it. Emergency Mot. [Doc. 27] at 7; *accord* Renewed Emergency Mot. [Doc. 34] at 8. This Court should reject the Bank's arguments to the contrary.

**B.   LONG-ESTABLISHED SUPREME COURT PRECEDENT REQUIRES THIS COURT TO ENFORCE—NOT DISREGARD—THE TRIBAL COURT'S JURISDICTIONAL RULING.**

Findleton's assertion, which Judge Moorman echoes, that this Court must treat the Tribal Court's orders as "void" is contrary to long-established precedent that requires courts to defer to a tribal court's determination about whether it has jurisdiction over a given controversy.  In *National Farmers Union*, the Supreme Court explained the doctrine known as exhaustion of tribal remedies, which requires courts to defer to a tribal court on jurisdictional matters: "***We believe th[e] [jurisdictional] examination should be conducted in the first instance in the Tribal Court itself***." 471 U.S. at 856  (emphasis added).  The exhaustion requirement, which the Supreme Court reiterated and expanded in *LaPlante*, applies in all but three scenarios:   (1) "where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith'"; (2) "where the action is patently violative of express jurisdictional prohibitions"; or (3)  "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Id.* at 856 n.21.

The exhaustion requirement is partly based on promoting judicial efficiency and the Supreme Court's concern that a contrary rule would create a "procedural nightmare":

> Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed.   The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made.  Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*Id.* at 856–57.  These considerations apply regardless of whether a state or federal court seeks to assert jurisdiction.   *E.g.*, *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 (1987) ("Adjudication of [jurisdictional] matters by *any* nontribal court . . . infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law."); *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsvn.*, 416 P.3d 401, 431 (Utah 2017) (Himonas, J., concurring) (observing that "the policy underlying the tribal exhaustion rule admits of no distinction between federal and state courts").

The timing of when tribal court jurisdiction is asserted is irrelevant to the exhaustion analysis. In *Crawford v. Genuine Parts Co.*, the court reversed the district court's conclusion that deference to

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

- 7 -

the tribal court's jurisdictional ruling under *National Farmers Union* and *LaPlante* "was not necessary" because "the assertion of tribal court jurisdiction was untimely." 947 F.2d 1405, 1408 (9th Cir. 1991). "When the dispute is a 'reservation affair,'" the court explained, "there is no discretion not to defer under *LaPlante* and *National Farmers Union*." *Id.*; *accord Window Rock Unif. Sch. Dist. v. Reeves*, 861 F.3d 894, 897 (9th Cir. 2017) ("A tribal adjudicative body generally must have the first opportunity to evaluate its jurisdiction over a matter pending before it."). These principles preclude this Court from disregarding the Tribal Court's jurisdictional ruling, which the Tribal Court entered **before** the State Court ruled that it had subject-matter jurisdiction and entered the Order Compelling Mediation/Arbitration.

To support his argument to the contrary, Findleton quotes the Court of Appeal for the proposition that the Tribe invoked the Tribal Court's jurisdiction to "negate th[e] [State] Court's order compelling mediation and/or arbitration." Findleton Resp. [Doc. 43] at 7. Similarly, Judge Moorman accuses the Tribe of "attempt[ing] to thwart the [S]tate [C]ourt's orders by enlisting the aid of a previously unavailable tribal court." Moorman Resp. [Doc. 51] at 8. In addition to contravening *Crawford*, which rejected a similar timing-related argument, Findleton's and Judge Moorman's assertions are demonstrably inaccurate. The Tribe invoked the Tribal Court's jurisdiction *before* the State Court held a hearing on Findleton's Petition to Compel Mediation/Arbitration (the "Petition") and subsequently ruled that it had subject-matter jurisdiction over Findleton's Petition.

An examination of the procedural history in the State Court and Tribal Court proceedings shows that Findleton's and Judge Moorman's arguments are based on a mischaracterization of the State Court's and Court of Appeal's respective rulings and a mistaken application of federal law that the Ninth Circuit has expressly rejected. For instance, Judge Moorman asserts that the State Court "dismissed [Findleton's Petition] for lack of jurisdiction, and the California Court of Appeal reversed." This implies—incorrectly—that the Court of Appeal concluded the State Court has subject-matter jurisdiction and reversed on that basis. But the Court of Appeal only held that the Tribe waived sovereign immunity and remanded for "further proceedings consistent with [its] opinion." *Findleton I*, 205 Cal. Rptr. 3d at 719. Thus, because "sovereign immunity and subject matter jurisdiction present

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

distinct issues," *Park Place Assoc.*, 563 F.3d at 923, as a matter of law, the Court of Appeal did not conclude that the State Court had subject-matter jurisdiction over Findleton's Petition.  *See also, e.g.*, *Alvarado v. Table Mtn. Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007) ("[T]he absence of immunity does not establish the presence of subject matter jurisdiction.").

Based on the timing of the Tribal Court's and State Court's respective rulings, it is illogical to conclude that the Tribe invoked the Tribal Court's jurisdiction to "negate" an order (that had not been entered) from the State Court (which had not ruled that it had subject-matter jurisdiction).  Timing is irrelevant in any event because under *National Farmers Union* and *LaPlante*, the State Court had no discretion to disregard the Tribal Court's jurisdictional ruling.  *Crawford*, 947 F.2d at 1408.  This Court should reject Findleton's and Judge Moorman's arguments to the contrary and grant the Tribe's request for a preliminary injunction.

## C.   NEITHER *ROOKER-FELDMAN*, NOR *YOUNGER*, NOR *COLORADO RIVER* PRECLUDE THIS COURT FROM GRANTING THE TRIBE'S REQUEST FOR A PRELIMINARY INJUNCTION.

### 1.   The *Rooker-Feldman* Doctrine Does Not Apply.

The *Rooker-Feldman* doctrine does not, as Judge Moorman argues[1], bar this Court from granting the Tribe's request for a preliminary injunction.  Judge Moorman fails to acknowledge two exceptions to the *Rooker-Feldman* doctrine that apply here.  First, the *Rooker-Feldman* doctrine notwithstanding, "a federal plaintiff may complain of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants."  *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003).  This includes cases when the federal plaintiff "complain[s] of legal injury caused by [a] state court judgment based on its allegedly incorrect holdings that it had personal jurisdiction over [the federal plaintiff]."  *Id.*  Thus, because the Tribe alleges that the State Court's rulings on subject-matter jurisdiction are erroneous and have caused the Tribe legal injury, the *Rooker-Feldman* doctrine does not apply.

---

[1] Only Judge Moorman invokes the *Rooker-Feldman* doctrine in opposition to the Tribe's Motion for Preliminary Injunction.  *See* Moorman Resp. [Doc. 51] at 9.  Although Findleton raises *Rooker-Feldman* in his Motion to Dismiss, Findleton Mot. [Doc. 42-1] at 12, he did not incorporate his Motion into his opposition to the Tribe's Motion for Preliminary Injunction, *see* Findleton Resp. [Doc. 43].  In any event, the arguments in Findleton's Motion toward applying the *Rooker-Feldman* doctrine here fail for the reasons set forth in this Reply.

Second, Judge Moorman also ignores that "[a]n exception to *Rooker-Feldman* applies when the state proceeding is a legal nullity and void ab initio," *In re Pavelich*, 229 B.R. 777, 783 (9th Cir. B.A.P. 1999), such as when the state court lacks subject matter jurisdiction over the proceedings in question, *Merrell v. United States*, 140 F.2d 602, 606 (10th Cir. 1944) (noting that a state court's judgment is not exclusive from federal jurisdiction if "the absence of jurisdiction over the subject matter . . . affirmatively appears from the fact of the proceedings."). This is consistent with long-established Supreme Court precedent, which provides that a state court judgment is "void, and subject to collateral attack," when the state court lacks jurisdiction. *Kalb v. Feuerstein*, 308 U.S. 433, 437–38 (1940).

Judge Moorman also fails to acknowledge that the *Rooker-Feldman* doctrine is inapplicable to actions seeking recognition and enforcement of tribal court judgments that do not "conflict[] with another final judgment *entitled to recognition*." *Wilson v. Marchington*, 127 F.3d 805, 810 (9th Cir. 1997) (emphasis added); *see also Lawrence II*, 22 F.4th at 9092910. In other words, to undertake the analysis required under *Wilson*, a court must determine not only whether a state court judgment exists, but also whether the state court judgment is "entitled to recognition." *Wilson*, 127 F.3d at 810. This is contrary to the analysis under *Rooker-Feldman*, which looks only to whether a state court judgment exists. Thus, application of the *Rooker-Feldman* here would foreclose the *Wilson* comity framework. And unlike the Tribe, which cites *Lawrence II* to support its position, Judge Moorman cites no case in which the court applied the *Rooker-Feldman* doctrine instead of the comity framework in a case when, as here, a tribal court's judgments conflict with the judgments and orders from a state court that lacks subject-matter jurisdiction.

Another aspect of the "entitled to recognition" component of the Ninth Circuit's comity framework further undercuts the proposition that *Rooker-Feldman* applies here. When the *Rooker-Feldman* doctrine applies, federal courts lack jurisdiction and cannot exercise any discretion whatsoever. *See, e.g.*, *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012); *Fleming v. Gordon & Wong L. Grp., P.C.*, 723 F. Supp. 2d 1219, 1222 (N.D. Cal. 2010). This contrasts with the Ninth Circuit's comity framework, which does not require the Court to decline recognition and enforcement

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

of a tribal court judgment even if it conflicts with a state court judgment that is entitled to recognition. In that scenario, the Court "may, *in its discretion*, decline to enforce [the] tribal judgment on equitable grounds." *Wilson*, 127 F.3d at 810 (emphasis added). This is notably distinct from the enumerated scenarios when the court "must neither recognize nor enforce tribal judgments." *Id.*

The inquiry embodied in the "entitled to recognition" component of the Ninth Circuit's comity framework echoes the Supreme Court's consistent conclusion that state court judgments are not entitled to recognition and enforcement if the court lacked subject-matter jurisdiction:

> Chief among the[] limitations [on the full-faith-and-credit doctrine] is the caveat, consistently recognized by this Court, that 'a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment.' Consequently, before a court is bound by the judgment rendered in another State, it may inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given.

> This limitation flows directly from the principles underlying the Full Faith and Credit Clause. It is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties. One State's refusal to enforce a judgment rendered in another State when the judgment is void for lack of jurisdiction merely gives to that judgment the same 'credit, validity, and effect' that it would receive in a court of the rendering state.

*Underwriters Nat. Assur. Co. v. N. Carolina Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705 (1982) (citation omitted) (quoting *Durfree v. Duke*, 375 U.S. 106, 110 & n.10 (1963); *accord People of State of N.Y. ex rel. Halvey v. Halvey*, 330 U.S. 610, 614 (1947) ("If the court of the State which rendered the judgment had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause.").

Consistent with *Underwriters National Assurance Co.*, the Ninth Circuit concludes that "state-federal full faith and credit principles concern the enforceability of judgments, and therefore incorporate otherwise applicable limitations on enforceability." *Hawthorne Sav. F.S.B. v. Reliance Ins. Co. of Ill.*, 421 F.3d 835, 849 (9th Cir. 2005). Representative in this regard is *Swett v. Schenk*, in which the Ninth Circuit refused to recognize and enforce a state court's orders because the "state court lacked jurisdiction to enter its order in the first instance," such that the "comity and full faith and credit . . . doctrines do not apply." *Swett v. Schenk*, 792 F.2d 1447, 1452 (9th Cir. 1986). Other circuits

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

likewise conclude that a state court's judgment is not entitled to recognition if the state court lacked jurisdiction in the first place. *See, e.g.*, *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1020 (5th Cir. 1982) ("[F]ull faith and credit will not be given a judgment if the rendering court did not have jurisdiction over the parties and the subject matter."); *Stone v. Williams*, 970 F.2d 1043, 1057 (2d Cir. 1992) ("Because a court's adjudication is conclusive only if it had power to pass on the merits of the action . . . one may collaterally attack the subject matter or *in personam* jurisdiction of the court rendering a judgment put forth as preclusive.").

Representative in this regard, and directly on point, are the proceedings in *Lawrence II* and related cases.  To begin, Judge Moorman asserts, that *Lawrence II* is an "unpublished case," which is plainly incorrect[2], and that "[t]he appellees in [*Lawrence II*] did not raise . . . the *Rooker-Feldman* doctrine, *Younger* [a]bstention, the *Colorado River* doctrine, judicial immunity, the Eleventh Amendment, and the Anti-Injunction Act," which is demonstrably inaccurate.  Moorman Resp. [Doc. 51] at 19.  As the district court observed, the Hon. Barry Lawrence and Lynn Becker, both of whom are named defendants in *Lawrence II*, raised the very arguments Judge Moorman asserts here:

> Judge Lawrence argued that several doctrines—including *Rooker–Feldman*, *Younger* and *Colorado River* abstention, judicial immunity, and Eleventh Amendment immunity—protected the state court from being sued in federal court, especially by a losing party complaining of injuries caused from state court judgments.  Becker likewise filed a motion to dismiss the Tribe's Complaint, incorporating by reference Judge Lawrence's arguments and alleging the court lacked subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1362.

*Ute Indian Tribe of Uintah and Ouray Reservation v. Lawrence*, 289 F. Supp. 3d 1242, 1248 (D. Utah 2018).  Moreover, although the district court ruled that *Younger* and the Anti-Injunction Act precluded it from granting the Ute Tribe's request for a preliminary injunction, *id.* at 1255–56, the Tenth Circuit later rejected application of abstention doctrines.  *Lawrence II*, 22 F.4th at 908 n.17 ("[T]his case does not present the 'exceptional circumstances' required to abandon our duty to 'adjudicate a controversy properly before [us].'" (alterations original) (quoting *Colorado River*, 424 U.S. at 813)).

---

[2] There is no basis for *asserting Lawrence* II is an "unpublished case."  The Tribe's initial motion for preliminary injunction [doc. 8] uses the Westlaw citation for *Lawrence II* (2022 WL 5341), which was issued on January 6, 2022, only because the *Federal Reporter* citation was unavailable at the time of filing.  In subsequent filings, the Tribe uses the *Federal Reporter, Fourth Series* citation for *Lawrence II* (22 F.4th 892).

In his Motion to Dismiss, Findleton relies on excerpted language from *In re Gruntz*, 202 F.3d 1074 (9th Cir. 1999), to support applying the *Rooker-Feldman* doctrine here.  *See* Findleton Mot. [Doc. 42-1] at 12–13.  But the excerpted language misses the point of *Gruntz*, in which the court rejected application of the *Rooker-Feldman* doctrine because of federal courts' plenary power over bankruptcy matters, with which state courts may not interfere.[3]  *Gruntz*, 202 F.3d at 1084.  As the Ninth Circuit explained in *Gruntz*, a reverse *Rooker-Feldman* situation is presented when state courts decide to proceed in derogation of the stay [mandated by 11 U.S.C. § 362], because it is the state court which is attempting impermissibly to modify the federal court's injunction."  *Id.*

Viewed through this lens, *Gruntz* undermines applying the *Rooker-Feldman* doctrine here because this case presents a similar "reverse *Rooker-Feldman* situation."  *Id.*  Indeed, the State Court impermissibly disregarded the Tribe's sovereignty and sovereign immunity, which includes matters relating to the Tribal Court's jurisdiction, and continues to exercise jurisdiction without congressional authorization.  *See Iowa Mut. Ins. Co.*, 480 U.S. at 18 (stating that "[c]ivil jurisdiction over" "the activities of non-Indians on reservation lands" "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute"); *Alvarado*, 509 F.3d at 1016 (stating that state courts lack subject-matter jurisdiction over a sovereign "absent statutory authority vesting the [state] court with subject matter jurisdiction"); *Window* Rock, 861 F.3d at 897 ("A tribal adjudicative body generally must have the first opportunity to evaluate its jurisdiction over a matter pending before it.").  Thus, consistent with *Gruntz*, this Court should not apply the *Rooker-Feldman* doctrine because doing so would interfere with the "plenary federal control and definition" of all "aspect[s] of tribal sovereignty."  *Three Affiliated Tribes of Fort Berthold Rsvn. v. Wold Eng'g*, 476 U.S. 877, 891 (1986).

### 2. The *Younger* Doctrine Does Not Apply.

Judge Moorman and Findleton invoke *Younger* for the proposition that this Court should allow

---

[3] Similarly, "the Indian Commerce Clause vests Congress with plenary power over Indian tribes and [] this power is not delimited by state boundaries." *Upstate Citizens for Equal., Inc. v. United States* (2d Cir. 2016) 841 F.3d 556, 568. This Court should reject any application of the *Rooker-Feldman* doctrine where, as here, a defendant attempts to use the doctrine to assert jurisdiction over an Indian tribe in the absence of Congressional authorization.

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA 85016

the State Court proceedings to run their course, but the doctrine is inapposite.  Although *Younger* is a doctrine under which federal courts abstain from interfering with ongoing state court proceedings, it applies only to "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–81 (2013). "[A]bstention from the exercise of federal jurisdiction is the exception, not the rule," *id.* at 82, and several courts, including the Ninth Circuit, have held that no sufficiently important state interest is involved when an Indian tribe seeks to enjoin state actions over which the state lacks jurisdiction.  *See, e.g.*, *Fort Belknap Indian Cmty. of Fort Belknap Indian Rsrv. v. Mazurek*, 43 F.3d 428, 430 (9th Cir. 1994); *Seneca-Cayuga Tribe of Okla. v. State of Oklahoma ex rel. Thompson*, 874 F.2d 709, 713 (10th Cir. 1989).

As discussed in the Tribe's Renewed Emergency Motion for Temporary Restraining Order [Doc. 34] (the "Renewed Emergency Motion"), which the Tribe incorporates by reference, *Younger* abstention does not apply when the state court lacks jurisdiction in the first place.  This is so because, as the Ninth Circuit expressly stated in *Sycuan Band of Mission Indians v. Roache* "the threshold jurisdictional issue" of whether a state court has jurisdiction to begin with is a "question of federal, not state law, and a state "can have no legitimate interest" in intruding on another tribunal's exclusive jurisdiction.  54 F.3d 535, 541 (9th Cir. 1994); *accord, e.g.*, *Gartrell Const. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991) (emphasizing that "[n]o significant state interest is served where the state law is preempted by federal law and that preemption is 'readily apparent'" because, in such a case, "the state tribunal is acting beyond its authority and *Younger* abstention is not required"); *Champion Int'l Corp. v. Brown*, 731 F.2d 1406 (9th Cir. 1984) (similar).  *Younger* abstention, therefore, is "not appropriate in a case in which a state tribunal is acting beyond its authority." *Sycuan*, 54 F.3d at 541.

*Younger* does not apply here because, as discussed in the Tribe's Motion for Preliminary Injunction [Doc. 9 at 19–24], Findleton's claims arise out of conduct occurring on tribal land, and Congress has not authorized the State Court to exercise jurisdiction—points Findleton and Judge Moorman do not dispute.  *See Alvarado*, 509 F.3d at 1016 ("[For a state court to have] subject matter jurisdiction in an action against a sovereign, in addition to a waiver of sovereign immunity, there must

- 14 -

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

be statutory authority vesting the [state] court with subject matter jurisdiction.").  It is also "readily apparent" that the "state tribunal is acting beyond its authority," such that *Younger* does not apply.  *See Gartrell Const.*, 940 F.2d at 441.  Indeed, the State Court's conclusion that it has subject-matter jurisdiction is based on the reasoning, which the Ninth Circuit repeatedly rejected, that "[w]hen a tribe waives sovereign immunity it, in effect, consents to state court jurisdiction."  Ex. I to Verif. Compl. [Doc. 1-2] at 125.  This contravenes the Ninth Circuit's unequivocal statement that "the absence of immunity does not establish the presence of subject matter jurisdiction."  *Alvarado*, 509 F.3d at 1016; *accord, e.g.*, *U.S. v. Park Place Assoc., Ltd.*, 563 F.3d 907, 923 (9th Cir. 2009) ("We have occasionally 'mistakenly equate[d] sovereign immunity with lack of subject matter jurisdiction.'  Although the concepts are related, sovereign immunity and subject matter jurisdiction present distinct issues." (citation omitted)).  Thus, because the State Court plainly lacks subject-matter jurisdiction, *Younger* abstention does not apply.

### 3.    The *Colorado River* Doctrine Does Not Apply.

There is no merit to Judge Moorman's assertion that the *Colorado River* doctrine applies because this case "presents difficult questions of state law bearing on policy problems of substantial public import."  Moorman Resp. [Doc. 51] at 13.  According to Judge Moorman, the State Court "is making decisions on jurisdiction over contractual obligations between Native American tribes and non-Native Americans within the state's borders."  *Id.*  Judge Moorman further asserts that "Californians and tribes need to know . . . whether the state will enforce sovereign immunity waiver clauses," and she implies that *Colorado River* abstention is proper because the State Court purportedly has "concurrent jurisdiction" over Findleton's claims.  *Id.* at 13–14.  Contrary to Judge Moorman's assertions, whether the State Court has jurisdiction and will recognize sovereign immunity clauses are matters of federal law, and the State Court does not have any jurisdiction whatsoever over Findleton's claims.

The State Court has no interest in deciding whether it has jurisdiction over Findleton's claims (and claims like his) because, as discussed, that matter is for Congress alone to decide.  *See, e.g.*, *Alvarado*, 509 F.3d at 1016 ("[For a state court to have] subject matter jurisdiction in an action against

a sovereign, in addition to a waiver of sovereign immunity, there must be statutory authority vesting the [state] court with subject matter jurisdiction."). And Congress decided the issue when it declined to vest the State Court with subject-matter jurisdiction in enacting and later amending 28 U.S.C. § 1360. *See Bryan v. Itasca Cnty.*, 426 U.S. 373, 388 (1976) (observing that "any conferral of state jurisdiction over the tribes themselves" is "notably absent" from 28 U.S.C. § 1360). Moreover, Judge Moorman's assertions that Findleton's dispute is one arising "within the state's borders" and the State Court has "concurrent jurisdiction" over it ignore the Tribe's sovereignty and the Tribal Court's legitimacy. As discussed, the Tribal Court, and not the State Court, has jurisdiction over Findleton's claims, which involve a transaction occurring exclusively on the Coyote Valley Reservation. *See Iowa Mut. Ins. Co.*, 480 U.S. at 18 (stating that "[c]ivil jurisdiction over" "the activities of non-Indians on reservation lands" "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute"). This conclusion alone defeats application of *Colorado River*, in which the Supreme Court expressly stated that dismissal under abstention principles "clearly would have been inappropriate if the state court had no jurisdiction." 424 U.S. at 809.

Also misleading and incorrect is Judge Moorman's argument regarding recognition of "sovereign immunity waiver clauses." Moorman Resp. [Doc. 51] at 13. As discussed in the Tribe's Motion for Preliminary Injunction, the clauses at issue here state that the Tribe *does not* waive sovereign immunity, Mot. [Doc. 8] at 17–19, and it is misleading to characterize them as "sovereign immunity waiver clauses." In any event, there is no need for the State Court to provide additional clarity on the interpretation and enforcement of sovereign immunity waivers because the U.S. Supreme Court has already done so: "*It is settled* that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed," *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (emphasis added) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)), and a sovereign's "consent to be sued 'must be construed strictly in favor of the sovereign' and not 'enlarge[d] . . . beyond what the language requires,'" *United States v. Nordic Village Inc.*, 503 U.S. 30, 34 (1992) (citations omitted) (third alteration original). This Court should follow the Tenth Circuit's lead in *Lawrence II* and reject the argument that *Colorado River* abstention applies here. *See Lawrence II*, 22 F.4th at 907 n.17.

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

1

2

### D.   THE ANTI-INJUNCTION ACT DOES NOT PRECLUDE THIS COURT FROM GRANTING THE TRIBE'S MOTION FOR A PRELIMINARY INJUNCTION.

3   The Anti-Injunction Act does not apply here because the Tribe's request for a preliminary

4   injunction falls squarely within the Act's "necessary in aid" exception.  As discussed above, all

5   "aspect[s] of tribal sovereignty " are subject to "plenary federal control and definition," *Three*

6   *Affiliated Tribes*, 476 U.S. at 891, and as discussed in the Tribe's Renewed Emergency Motion [Doc.

7   34], the Ninth Circuit and courts in other circuits conclude that the Anti-Injunction Act does not apply

8   when an injunction is necessary to preserve federal jurisdiction, *e.g. Sycuan Band of Mission Indians v.*

9   *Roache*, 54 F.3d 535, 540 (9th Cir. 1994); *Bowen v. Doyle*, 880 F. Supp. 99, 130 (W.D.N.Y. 1995);

10  *Tohono O'odham Nation v. Schwartz*, 837 F. Supp. 1024, 1028 (D. Ariz. 1993).  The "necessary in

11  aid" exception to the Anti-Injunction Act applies when, as here, an injunction is required to prevent a

12  state court from interfering with federal jurisdiction over tribal matters.

13  Representative is *Pueblo of Santa Ana v. Nash*, in which the court invoked Ninth Circuit

14  precedent to explain that the "necessary in aid" exception "applies to preserve the integrity of tribal

15  claims and/or tribal sovereignty."  854 F. Supp. 2d 1128, 1142–43 (D.N.M. 2012); *accord White Mtn.*

16  *Apache Tribe v. Smith Plumbing Co., Inc.*, 856 F.2d 1301, 1304 (9th Cir. 1988) (concluding that the

17  Act "does not bar [a] Tribe's request for injunctive relief" against state court proceedings because

18  "[t]he district court has jurisdiction to preserve the integrity of tribal claims").  Likewise, in *Bowen v.*

19  *Doyle*, the court observed that the "necessary in aid" exception "has been expressly held to permit

20  Indian tribes to bring federal court suits to enjoin state court proceedings where the threshold issue is

21  whether the state court has jurisdiction over the subject matter of the dispute."  54 F.3d at 540.  And in

22  *Tohono O'odham Nation*, the court concluded that, because of the "necessary in aid" exception, the

23  Anti-Injunction Act did not prohibit the court from *permanently enjoining* state court proceedings in

24  which a non-Indian brought a claim for breach of contract arising from a housing project on tribal land.

25  837 F. Supp. at 1028.

26  As also discussed in the Tribe's Renewed Emergency Motion [Doc. 34], the district court

27  invoked the Anti-Injunction Act in dismissing the Ute Tribe's claims and denying its request to enjoin

28  the concurrent state court proceedings.  *Ute Indian Tribe of the Uintah and Ouray Rsrv'n v. Lawrence*,

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

- 17 -

289 F.Supp.3d 1242, 154-58 (D. Utah, 2018).  The Tenth Circuit reversed and ordered the district court to "exercise its original jurisdiction . . . and decide the Tribe's request for injunctive relief against the state court proceedings."  *Ute Indian Tribe of Uintah & Ouray Reservation v. Lawrence*, 2:16-CV-00579, 2018 WL 941720, at *1 (D. Utah Feb. 17, 2018).   Acting pursuant to the Tenth Circuit's instructions, the district court invoked the "necessary in aid" exception to the Anti-Injunction Act and enjoined the state-court proceedings:

> Typically, this court would not enjoin the State court from proceeding because that sovereign has concluded it has jurisdiction, but the unique circumstances of three sovereigns contending for jurisdiction in this action and related litigation demand it. . . This court has the unique authority to determine jurisdiction between the State and the Tribe. . . . To aid in the court's jurisdiction, this court **necessarily must enjoin the State court proceedings** pursuant to its authority under [28 U.S.C. §] 1362 and the Anti-Injunction Act.

*Id.* at *2–3 (emphasis added).   The Tenth Circuit's subsequent opinion granting the Ute Tribe a *permanent* injunction against the state court proceedings underscores the district court's conclusion that the Anti-Injunction Act did not apply.  *Lawrence II*, 22 F.4th at 909; *see also id.* at 900 n.17 ("[T]his case does not present the 'exceptional circumstances' required to abandon our duty to 'adjudicate a controversy properly before [us].'" (alteration original) (quoting *Colo. River*, 424 U.S. at 813).  This outcome is consistent with the Ninth Circuit's reasoning in *Smith Plumbing Co.* that the Act "does not bar [a] Tribe's request for injunctive relief" against state court proceedings because "[t]he district court has jurisdiction to preserve the integrity of tribal claims."  856 F.2d at 1304.

Here, the "necessary in aid" exception forecloses application of the Act.  At its core, this case involves conflicting orders from the State Court and Tribal Court, and the aim of the Tribe's claims and request for injunctive relief is to protect the Tribe's sovereignty and sovereign immunity.  There is no dispute that the State Court proceedings will continue absent injunctive relief, but as discussed below, an Indian tribe suffers irreparable harm when it is "forced to expend time and effort on litigation in a court that does not have jurisdiction over it."  *Seneca-Cayuga Tribe of Okla. v. State of Okla.*, 874 F.2d 709, 716 (10th Cir. 1989).   Thus, the Act's "necessary in aid" exception applies because this Court "has jurisdiction to preserve the integrity of tribal claims," *Smith Plumbing*, 856 F.2d at 1304, and because the integrity of the Tribe's claims will be lost without injunctive relief.  This

- 18 -

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

Court should reject Defendants' arguments to the contrary.

### E. THE TRIBAL COURT IS A DULY FORMED AND LEGITIMATE TRIBUNAL, AND DEFENDANTS' ASSERTIONS TO THE CONTRARY ARE UNFOUNDED.

Despite the well-established principle that "federal courts must recognize and enforce tribal court judgments under principles of comity," *AT&T Corp.*, 295 F.3d at 903, Findleton asserts that this Court "need not consider the efficacy of the tribal court orders" and characterizes them as "apparently void," Findleton Resp. [Doc. 43] at 7. Findleton also insists that the Tribal Court was "secretly formed," was "held to have been fraudulently set up," and is not a "duly constituted court of the federally funded NCICS."[4] Findleton Resp. [Doc. 43] at 7. Judge Moorman echoes as much and asserts that the Tribe "attempted to thwart the state court's orders by enlisting the aid of a previously unavailable tribal court." Moorman Resp. [Doc. 51] at 8. Findleton's and Judge Moorman's assertions parallel arguments against tribal court legitimacy and tribal-plaintiff underhandedness that federal courts, including the Ninth Circuit and Supreme Court, have decidedly repudiated. *See, e.g.*, *FMC Corp. v. Shoshone-Bannock Tribes*, 942 F.3d 916, 943 (9th Cir. 2019) (stating that "the Supreme Court, our circuit, and our sister circuits have repeatedly rejected" non-Indians' arguments against tribal courts' legitimacy and fairness).

In *Norton v. Ute Indian Tribe of the Uintah and Ouray Reservation*, the court concluded that the district court abused its discretion in granting a preliminary injunction against tribal court proceedings that various tribal plaintiffs, including the Ute Tribe, filed against police-officer defendants while the tribal plaintiffs' appeal from a ruling in the officers' favor was pending. 862 F.3d 1236, 1242, 1252 (10th Cir. 2017). In so concluding, the court invoked comity principles to reject the officers' argument that the tribal plaintiffs "filed their [tribal court] suit with a desire to harass or in bad faith." Quoting the Ninth Circuit, the court explained that "[c]omity principles require that that we trust our tribal court counterparts can identify and punish bad faith litigants as readily as we can." *Id.* at 1249 (quoting *Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1021 (9th Cir.

---

[4] Findleton has made similar arguments in the State Court proceedings, including that the Tribal Court "is not a legitimate court," *Findleton III*, 285 Cal. Rptr. 3d at 69, which the California Court of Appeal rejected, *id.* at 66 ("As to the tribal court and Findleton's assertions about it, there has been no fraud on this court.").

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

2013)).  In rejecting the officers' assertions of underhandedness as "baseless 'attacks' on the competence and fairness of the Ute Tribal Court" that were "contrary to federal policy," the court observed that the Supreme Court has "'repeatedly' recognized tribal courts 'as appropriate forums for the *exclusive* adjudication of disputes affecting important personal and property interests of both Indians <u>and non-Indians</u>.'"  *Id.* (first emphasis added) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 (1978)); *see also, e.g.*, *FMC Corp.*

Although the analysis above alone forecloses Findleton's and Judge Moorman's arguments against the Tribal Court's legitimacy, the Judicial Branch of California's website further undermines the proposition that the Tribal Court was "secretly formed" and was "fraudulently set up."  Findleton Resp. [Doc. 43] at 7.  For instance, the Judicial Branch's website expressly recognizes that the Northern California Intertribal Court System, which includes the Coyote Valley Tribal Court, "is a consortium court serving four federally recognized tribes including . . . the Coyote Valley Band of Pomo Indians."  *Northern California Intertribal Court System*, JUD. COUNCIL OF CAL. (last visited March 3, 2022), https://www.courts.ca.gov/37348.htm.  The website also recognizes that the Honorable Joseph Wiseman—the same judge who entered each and every Tribal Court Order of which the Tribe seeks recognition and enforcement—is an NCICS judge.  *Id.*  This Court should reject the proposition that the Tribal Court is illegitimate and its orders are "apparently void."  Findleton Resp. [Doc. 43] at 7.

Although they do not expressly argue as much, Findleton and Judge Moorman seemingly imply that the State Court has subject-matter jurisdiction over this dispute, such that the Tribal Court Orders are invalid, purportedly because the Tribal Court did not exist when Findleton filed suit in State Court.  Indeed, ***neither Findleton nor Judge Moorman dispute that the Tribal Court has jurisdiction over an action between a nonmember and the Tribe arising on tribal land***, and so their position is based on timing alone.  But timing is inapposite; regardless of when the Tribal Court was constituted, the State Court may not exercise subject-matter jurisdiction over a dispute between a nonmember (Findleton) and an Indian tribe (the Tribe) arising on tribal land (the Coyote Valley Reservation) without authorization from Congress.  *See, e.g.*, *Alvarado*, 509 F.3d at 1016 ("Appellants cannot rest on the

assertion that principles of immunity do not apply.  Rather, Appellants must establish some form of statutory authorization for their claims.").  And because Congress did not authorize the State Court to exercise subject-matter jurisdiction in that scenario—*neither Findleton nor Judge Moorman dispute this*—it is the State Court's orders that are invalid and should be disregarded.  *Swett*, 792 F.2d at 1452 (stating that "comity and full faith and credit . . . doctrines do not apply" when the "state court lacked jurisdiction to enter its order in the first instance").  In arguing the contrary, Findleton and Judge Moorman ask this Court to ignore the State Court's *undisputed* lack of subject-matter jurisdiction, disregard the Tribal Court's *undisputed* jurisdiction, and turn a blind eye to the *presumptively valid* Tribal Court Orders.  *Contra Iowa Mut. Ins. Co.*, 480 U.S. at 18 ("Civil jurisdiction over" "the activities of non-Indians on reservation lands" "presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute.").

This proposition contradicts established precedent regarding the interplay between state and tribal court jurisdiction.  It is settled that when, as here, "state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, [then] the state courts are generally divested of jurisdiction *as a matter of federal law*."  *Id.* at 15 (emphasis added).  There also can be no dispute that allowing the State Court to continue exercising jurisdiction over the Tribe notwithstanding conflicting orders from the Tribal Court would undermine the Tribe's sovereignty and self-governance: "There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves."  *Williams v. Lee*, 358 U.S. 217, 218 (1959).  Hence, this Court cannot, as Defendants suggest, disregard the Tribal Court Orders and allow the State Court to continue exercising jurisdiction it never had in the first place.

### F.   NEITHER ELEVENTH AMENDMENT IMMUNITY NOR JUDICIAL IMMUNITY BAR THE TRIBE'S REQUEST FOR A PRELIMINARY INJUNCTION.

Judge Moorman contends, incorrectly, that the Tribe's claims and request for a preliminary injunction are barred by judicial immunity and the Eleventh Amendment.  Contrary to Judge Moorman's position, "judicial immunity is not a bar to prospective injunctive relief against a judicial

officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 542 (1984).  Likewise, the Eleventh Amendment is not an outright bar on a state or state officer being named as a defendant in federal court, and allows claims for relief "properly characterized as prospective" and based on "an ongoing violation of federal law." *Verizon Maryland, Inc. v. Public Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).  Moreover, the Eleventh Amendment does not bar a claim that "seeks a declaration of the *past*, as well as the *future*," so long as "no past liability of the State, or any of its [officers], is at issue." *Id.* at 646.  Thus, when a claim for declaratory relief is at issue, what matters is whether the plaintiff seeks to "impose upon the State 'a monetary loss resulting from a past breach of legal duty on the part of the defendant state officials.'" *Id.* (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)).

Here, neither judicial immunity nor Eleventh Amendment immunity apply because the Tribe seeks a preliminary injunction that *prospectively* prohibits the State Court (through Judge Moorman) from continuing to exercise jurisdiction Congress never granted to it, and to disregard the Tribe's sovereignty and sovereign immunity.  Additionally, the declaratory judgment the Tribe seeks is one stating that the State Court does not have subject-matter jurisdiction, which is not retrospective, and the Tribe does not seek to impose any monetary liability on Judge Moorman or the State Court.  The Tribe's claims and request for a preliminary injunction do not implicate judicial immunity or the Eleventh Amendment, and this Court should reject Judge Moorman's arguments to the contrary.

### G.   THE TRIBE'S INJURY IS NOT SOLELY MONETARY; ABSENT AN INJUNCTION, THE TRIBE WILL SUFFER IRREPARABLE HARM TO ITS SOVEREIGNTY AND SOVEREIGN IMMUNITY.

The proposition that the Tribe's injury is only monetary, and so it will not suffer irreparable harm if this Court denies injunctive relief, ignores the Tribe's sovereignty and sovereign immunity.  In *Williams v. Lee*, the Supreme Court reversed the Supreme Court of Arizona's holding that "Arizona courts are free to exercise jurisdiction over civil suits by non-Indians against Indians [even] though the action arises on an Indian reservation."  358 U.S. 217, 218 (1959).  In so concluding, the Supreme Court reasoned that a contrary outcome would undermine the Navajo Nation's sovereignty and tribal court legitimacy: "There can be no doubt that to allow the exercise of state jurisdiction here would

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Id.* at 223. Courts apply this reasoning in the preliminary injunction context and conclude that a tribe establishes irreparable harm when, as here, it is forced to litigate in a court without jurisdiction over it. *E.g.*, *Lawrence II*, 22 F.4th at 892 ("[B]ecause the Tribe, with its 'sovereign status,' 'should not be compelled to expend time and effort on litigation in a court that does not have jurisdiction,' it satisfies the second requirement of irreparable harm." (quotation marks omitted) (quoting *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1171–72 (10th Cir. 1998)).

These established authorities plainly foreclose Judge Moorman's argument that the Tribe has not shown it will suffer irreparable harm absent injunctive relief because "injury due to the time and expense of litigation . . . are not the type of claims that support injunctive relief." Moorman Resp. [Doc. 51] at 20. Also meritless are Judge Moorman's assertions that the Tribe will not suffer irreparable harm because "this case does not involve a sovereign's right to rule" and only "involves a tribe's sovereignty in relation to being made a party to litigation." Moorman Resp. [Doc. 51] at 19; *accord* Ex. I to Verif. Compl. [Doc. 1-2] at 125 (finding that "[t]here is nothing about the [State Court proceedings] that impinges on tribal sovereignty"). Judge Moorman fails to acknowledge that "[t]ribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty[,] [and] [c]ivil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Iowa Mut. Ins. Co.*, 480 U.S. at 18. Thus, as *Williams* made clear, "[t]here can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the [T]ribal [C]ourt[] over [Coyote Valley] Reservation affairs and hence would infringe on the right of the [Tribe] to govern themselves." 358 U.S. at 223. This Court should reject Judge Moorman's insistence to the contrary.

Defendants' insistence that the Tribe's injury is solely monetary and therefore not irreparable also lacks merit. Courts conclude that "the seizure of tribal assets . . . and the concomitant prohibition against full enforcement of tribal laws, significantly interferes with the Tribe's self-government." *Kiowa*, 150 F.3d at 1171–72. This is precisely the case here. In accordance with tribal law, including

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA 85016

the Enforcement of Judgments Ordinance, the Tribal Court's Second Permanent Injunction permanently enjoins Findleton from "taking any action to perfect a lien, levy or garnishment on the Tribe's personal property, or engage in any other action to collect any Foreign Judgment, without first moving to domesticate such judgment in the Tribal Court pursuant to Article 5, § 01, *et seq.* of the Coyote Valley Enforcement of Judgments Ordinance."  Ex. T to Verif. Compl. [Doc. 1-2] at 212 & *passim*.  Even though he expressly agreed to be subject to the Tribe's jurisdiction and laws, *see* Ex. B to Verif. Compl. [Doc. 1-2] at 93 § 18.1.2, Findleton disregarded the Second Permanent Injunction (and the Enforcement of Judgments Ordinance it requires him to follow[5]) and sought garnishment of the Tribe's funds with the State Court and Bank's assistance.  This irreparably harms the Tribe by depriving it of full enforcement of its laws, which "significantly interferes with the Tribe's self-government," *Kiowa*, 150 F.3d at 1171–72.  Defendants' arguments to the contrary are invalid.

### H.     THE UNCLEAN HANDS DOCTRINE DOES NOT APPLY, AND IN ANY EVENT, THE TRIBE DOES NOT HAVE UNCLEAN HANDS.

Findleton provides no authority to support invoking the unclean hands doctrine, but an examination of Ninth Circuit case law shows that the doctrine does not apply.  The unclean hands doctrine applies only when, unlike here, the plaintiff "has violated conscience, good faith or other equitable principles in his prior conduct" or "has dirtied his hands in acquiring the right presently asserted."  *Dollar Systems, Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).  Whether the unclean hands doctrine applies "raises primarily a question of fact," *id.*, and requires the court to "weigh the substance of the right asserted by plaintiff against the transgression which, it is contended, serves to foreclose that right," *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963).

In *Institute of Cetacean Research v. Sea Shepherd Conservation Society*, the Ninth Circuit concluded that the district court abused its discretion when it invoked the unclean hands doctrine to deny the Institute for Cetacean Research's ("Cetacean") motion for preliminary injunction against the Sea Shepherd Conservation Society ("Sea Shepherd").  725 F.3d 940, 947 (9th Cir. 2013).  Cetacean is

---

[5] Notably, the validity and applicability of the Enforcement of Judgments Ordinance is not at issue in the State Court, and so neither the abstention doctrines Defendants raise nor the Anti-Injunction Act preclude this Court from enforcing the Second Preliminary Injunction.

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

a Japanese entity that hunts whales and claimed Sea Shepherd was engaging in conduct that "amount[s] to piracy and violate[s] international agreements regulating conduct on the high seas." *Id.* at 943. According to the district court, Cetacean dirtied its hands by "flouting [an] Australian injunction" against whaling in portions of the Southern Ocean over which Australia claims sovereignty, which purportedly "demonstrated [Cetacean's] disrespect for a judgment of a domestic court." *Id.* at 947 (quotation marks omitted). The Ninth Circuit rejected this reasoning, however, "[b]ecause neither the United States nor Japan recognizes Australia's jurisdiction over any portion of the Southern Ocean, [such that] Cetacean owes no respect to the Australian order." *Id.* The Ninth Circuit also explained that the unclean hands doctrine did not apply because "Cetacean has done nothing to acquire the rights to safe navigation and protection from pirate attacks[,] [which] flow automatically from customary international law and treaties." *Id.* The court also rejected the proposition that there was "anything remotely inequitable in seeking to navigate the sea lanes without interference from pirates." *Id.*

The same reasoning applies here. The Tribe did not dirty its hands in acquiring its sovereignty and sovereign immunity, which form the basis of the Tribe's claims for recognition and enforcement of the Tribal Court's Orders. Indian tribes, including the Tribe, are "'separate sovereigns pre-existing the Constitution,' . . . [and] unless and 'until Congress acts, the tribes retain' their historic sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (first quoting *Santa Clara Pueblo*, 436 U.S. at 56, and then quoting *United States v. Wheeler*, 435 U.S. 313, 323 (1978)). "Among the core aspects of sovereignty that tribes possess . . . is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'" *Id.* (quoting *Santa Clara Pueblo*, 436 U.S. at 58. Thus, because sovereignty and sovereign immunity are inherent in the Tribe's existence, the Tribe could not have dirtied its hands in acquiring those rights.

The Tribe also did not dirty its hands by invoking the Tribal Court's jurisdiction. Findleton advances the misleading narrative that the Tribe invoked the Tribal Court's jurisdiction *after* the State Court entered the Order Compelling Mediation and Arbitration. *See* Findleton Resp. [Doc. 43] at 6. Notably absent from the chronology Findleton provides, however, is the timeline of the Tribal Court

proceedings. *See id.* at 4–5. This is perhaps because a complete chronology would show that the Tribe invoked the Tribal Court's jurisdiction in January 2017, *see* Ex. J to Verif. Compl. [Doc. 1-2] at 128, **months before** the State Court conducted the April 7, 2017 hearing on Findleton's Motion to Compel Mediation and Arbitration. Ex. I to Verif. Compl. [Doc. 1-2] at 124. This was also months before the State Court concluded, on April 24, 2017, that it had subject-matter jurisdiction and entered the Order Compelling Mediation and Arbitration. *Id.* at 126. In view of the Tribal Court's February 3, 2017 ruling that it—and not the State Court—had jurisdiction over Findleton's claims, Ex. J to Verif. Compl. [Doc. 1-2] *passim*, it bears emphasizing that the State Court did not rule it had subject-matter jurisdiction until April 24, 2017, Ex. I to Verif. Compl. [Doc. 1-2] at 126.

Invoking the Tribal Court's jurisdiction before the State Court ruled on the issue is consistent with Supreme Court precedent. For instance, in *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, the Supreme Court observed that allowing tribal courts to rule on jurisdiction in the first instance is consistent with the federal policy of promoting tribal sovereignty and self-governance and mitigates the risk of a dispute turning into the present procedural quagmire:

> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge. Moreover, the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

471 U.S. 845, 856 (1985) (footnotes omitted). Thus, because invoking the Tribal Court's jurisdiction before the State Court ruled on the issue is consistent with the federal policy of supporting tribal self-government and self-determination, the Tribe did not dirty its hands in doing so. Stated differently, there is not "anything remotely inequitable" in the Tribe seeking to exercise tribal self-government and self-determination. *See Institute of Cetacean Research*, 725 F.3d at 947.

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

Also inapposite—and factually inaccurate—is Findleton's accusation that the Tribe transferred the Tribe's casino assets (fraudulently or otherwise) to avoid collection of the State Court's judgments. As set forth in the Verified Complaint, in November 2017, the Tribe transferred all casino assets and liabilities to the Coyote Valley Entertainment Enterprises ("CVEE") to comply with lender and investor requirements imposed by the federal government's New Markets Tax Credit Program.  Verif. Compl. [Doc. 1] at ¶¶ 106–114.  Thus, because the Tribe did not make the transfer "with actual intent to hinder, delay, or defraud any creditor," Cal. Civ. Code § 3439.04(a), the transfer of assets to CVEE was not fraudulent.  This is corroborated by the Tribe's willingness to deposit the funds in question with this Court pursuant to Rule 67.  This Court should disregard the State Court's contrary ruling because the State Court issued it without giving the Tribe notice and an opportunity to be heard.  Verif. Compl. [Doc. 1] at ¶ 114.  In any event, the State Court's ruling is also inapposite because, as discussed, the State Court lacks subject-matter jurisdiction, and so its rulings and orders are void.  *See Swett*, 792 F.2d at 1452 (rejecting a state court's contempt order because the state court "lacked jurisdiction to enter its order in the first instance").

## I.   NEITHER THE BALANCE OF HARDSHIPS NOR PUBLIC POLICY FAVOR DENYING INJUNCTIVE RELIEF.

Neither Findleton nor Savings Bank challenge the Tribe's arguments that the balance of hardships and public policy favor granting the Tribe's Motion for Preliminary Injunction.  Judge Moorman, however, contends that the Tribe "fails to discuss any harm to California state courts that will result from the requested injunctive relief."  Moorman Resp. [Doc. 51] at 21.  This is inaccurate; the Tribe's Motion expressly argues that the balance of hardships "tips in its favor" because "the Tribe is faced with the prospect of continued interference with its self-government and will continue to be 'forced to expend time and effort on litigation in a court that does not have jurisdiction over it.'"  Mot. [Doc. 8] at 21 (quoting *Seneca-Cayuga Tribe of Okla.*, 874 F.2d at 716).  Similarly, the Tribe's Renewed Emergency Motion explains that "the State Court lacks subject-matter jurisdiction over Findleton's claims," and "no important state interest is involved when an Indian tribe seeks to enjoin state actions over which the state lacks jurisdiction."  Renewed Emergency Mot. [Doc. 34] at 12, 14.  The import of these and other similar arguments the Tribe has raised is that the State Court lacks a

legitimate interest, and the balance of equities tips in the Tribe's favor.

Judge Moorman fails to advance a legally cognizable harm to support her argument that the balance of hardships favors denying the Tribe's Motion for Preliminary Injunction.   According to Judge Moorman, "[t]he injury to the California state courts would . . . be any requirement that [she] stand before a court to explain herself."   Moorman Resp. [Doc. 51] at 21.   Considering that Judge Moorman is a named defendant in her official capacity, which is consistent with Fed. R. Civ. P. 17(d), her argument is essentially that the State Court will be harmed if the State Court, by and through Judge Moorman, is called to account for the legitimacy of its rulings and orders.   But as discussed, the Supreme Court has approved claims for "prospective injunctive relief against a judicial officer acting in her judicial capacity," *Pulliam*, 466 U.S. at 541, which necessarily requires the judge to defend the actions he or she took in that capacity.   In any event, as discussed, the State Court does not have a legitimate interest because it lacks subject-matter jurisdiction over Findleton's claims.   *See, e.g.*, *Fort Belknap Indian Cmty.*, 43 F.3d at 432 (concluding that a state does not have an interest when federal law does not vest the state with jurisdiction to regulate transactions arising on tribal land); *Sycuan Band of Mission Indians*, 54 F.3d at 541 (similar); *Gartrell*, 940 F.2d at 441 (similar); *Champion Int'l Corp. v. Brown*, 731 F.2d 1406 (9th Cir. 1984) (similar).   Thus, because the State Court lacks a legitimate interest, the balance of hardships favors granting the Tribe's Motion for Preliminary Injunction.

For similar reasons, public policy favors granting the Tribe's Motion, and this Court should reject Judge Moorman's assertions to the contrary.   Judge Moorman disregards the long-established policy, which federal and California courts both embrace, of recognizing, valuing, and protecting tribal sovereignty and sovereign immunity.   *E.g.*, *Iowa Mut. Ins. Co.*, 480 U.S. at 14, *Natl. Farmers Union*, 471 U.S. at 856; *Boisclair v. Super. Ct.*, 801 801 P.2d 305, 309 (Cal. 1990).   Directly relevant here is *National Farmers Union*, in which the Supreme Court acknowledged that "Congress is committed to a policy of supporting tribal self-government and self-determination."   471 U.S. at 856.   In view of that policy, the Supreme Court concluded that the jurisdictional "examination should be conducted in the first instance in the Tribal Court itself" because doing so "will encourage tribal courts to explain to the

parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review." *Id.* at 856–57.  Moreover, had the State Court deferred to the Tribal Court here as federal law requires, "[t]he risks of the kind of 'procedural nightmare' that has . . . developed in this case [would have been] minimized." *Id.*  The balance of hardships and public policy favor granting the Tribe's Motion.

### J.       BY HIS PROMISE TO INVOKE THIS COURT'S JURISDICTION, FINDLETON IS FORECLOSED FROM OPPOSING THE TRIBE'S REQUEST FOR INJUNCTIVE RELIEF.

Findleton's and Judge Moorman's opposition to the Tribe's Motion belie his and the State Court's numerous statements that this Court ***has*** jurisdiction and ***should*** resolve the conflict between the State Court's and Tribal Court's orders.  Findleton made a multitude of averments about the relief he planned to seek from the federal court.  Ex. U to Verif. Comp. [Doc. 1-2] at 233:7-13; 261:11-14; 261:2-14; 275:14-22; 283:19-21; 285:20-24.  Findleton expressly stated that "[w]e need to enjoin Judge Wiseman in Federal Court," emphasizing that "we think it's of paramount importance to go to Federal Court." *Id.* at 292: 8-19; 295: 3-9. Findleton doubled down on this promise, issuing a litigation hold letter to the Tribe on November 25, 2019 for a "federal lawsuit concerning the wrongful exercise of tribal court jurisdiction against Mr. Findleton and his attorneys." Ex. V to Verif. Comp. [Doc. 1-2].  These statements are utterly irreconcilable with Findleton's current arguments that various doctrines preclude this Court from granting the relief that Findleton himself previously promised to seek.

Mindful of the many prior occasions in which Findleton indicated his intent to file a federal action, the State Court again asked, "[a]re you intending to go forward with the federal case?," Ex. U to Verif. Comp. [Doc. 1-2] at 616:20-21, to which Findleton's counsel replied, "[a]bsolutely, your honor," *id*. at 616:22. The State Court so welcomed Findleton's filing in federal court that the trial judge invited a stipulation from the Tribe's counsel that Findleton had exhausted his state court remedies. *Id*. at 627:1-11.  Counsel acted on the Court's request and stipulated as requested on the record. *Id*. at 628:1-3.

After hearing argument from the parties about how to proceed in view of the conflicting orders from the State Court and Tribal Court, the State Court relied on Findleton's promise and refrained from further action, concluding that it was necessary for this Court to resolve the conflict:

THE COURT: . . . It seems to me that you need a court to decide, you know, which is the

- 29 -

controlling order.  And I think that can really only be done in the federal court.

I'm not going to take any further action at this point, because I understand what the impasse is about and I don't think that I am the appropriate court to make the determination that [the Tribe] need[s] to ignore the order from the tribal court and obey the order by the state court.

. . . I don't believe that it's appropriate for me to do anything further than what I've done at this point.

. . . And so I think until you have the federal court weigh in and indicate that, you know, this court's jurisdiction to make the orders that it made was appropriate, we're at a stop, you know?  I'm sorry, but that's my - - that's where we stand.

*Id.* at 234:6–9, 253:23–254:17.  The State Court further stated, "this is a matter where a federal court should fairly hear and decide, based on all the evidence, whether those actions taken by the Tribal Court are improvident and wrong." *Id.* at 267:1-8 (emphasis added). *See* other similar statements *id.* at 228:2-8; 266:19-25; 605:11-25, 606:1-18; 610:12-25, 611:1-3; 625:23-25, 626:1-17.

These statements contradict Judge Moorman's current position in opposition to this Court resolving the conflict between the State Court and Tribal Court orders. Indeed, the State Court made clear that deference to this Court was its ruling, *id.* at 249:11–12, which is based on Findleton's "promise to go to federal court," *id.* at 242:11–12.

Findleton's promise to go to federal court forecloses Findleton's current arguments that this Court is disabled by the Anti-Injunction Act or otherwise from resolving the precise question that he proposed to raise - the conflict between the State Court and Tribal Court orders. *See, e.g.*, *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) ("Judicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.").

**K.     AT VERY LEAST, DEFENDANTS HAVE NOT REBUTTED THE TRIBE'S SHOWING THAT THERE ARE SERIOUS QUESTIONS GOING TO THE MERITS.**

As discussed in the Tribe's Motion for Preliminary Injunction [Doc. 8], this Court must grant a preliminary injunction when the irreparable harm, balance of hardships, and public policy elements are satisfied, and the plaintiff also "shows . . . that serious questions going to the merits were raised." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *accord id.* (concluding that the district court "made an error of law" "[b]ecause it did not apply the 'serious questions' test").  Defendants do not address this alternative test, let alone contend that the Tribe has not shown that there are serious

FENNEMORE CRAIG, P.C.
2394 E. CAMELBACK ROAD, STE. 600
PHOENIX, ARIZONA, 85016

questions going to the merits.  This is perhaps because, in view of *Lawrence II*, which is directly on point and supports the Tribe's position, ***at very least*** the Tribe has shown that there are serious questions going to the merits.  A preliminary injunction is proper, and the Court should grant the Tribe's Motion.

## III.     CONCLUSION

For the reasons above and in the Tribe's Motion for Preliminary Injunction [Doc. 8], Emergency Motion [Doc. 27], and Renewed Emergency Motion [Doc. 34], the Tribe respectfully requests that this Court grant the Tribe's Motion for Preliminary Injunction.  The Tribe further requests that this Court amend the Tribe's proposed Order to enjoin the Bank from facilitating collection of the State Court's monetary awards against the Tribe and violating the Tribal Court's Orders.

DATED this 3rd day of March, 2022.

CEIBA LEGAL, PC

By: _____
Little Fawn Boland (SBN 240181)

KEITH ANDERSON, ATTORNEY AT LAW
Keith Anderson (SBN 282975)

FENNEMORE CRAIG, P.C.
Todd S. Kartchner (SBN 250215)
Chris Callahan (Admitted Pro Hac Vice)

CROWELL LAW OFFICE
TRIBAL ADVOCACY GROUP LLP
Scott Crowell (Admitted Pro Hac Vice)

*Attorneys for Plaintiff*
*Coyote Valley Band of Pomo Indians*

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION